In re GEORGE WALTER & SONS, Inc.

## BUTLER BOARD OF COMMERCE v. BUTLER COUNTY TRUST CO.

(Circuit Court of Appeals, Third Circuit. January 18, 1926.)

No. 3382.

1. Bankruptcy ⊚⇒140(3)—Under bankrupt's contract to pay Board of Commerce commission on freight overcharges recovered, board held entitled to commission.

Where shipper by contract agreed to pay to a Board of Commerce, of which it was member, "a commission of 50 per cent. of all moneys received" from railroads for freight overcharges, not as compensation, but to enable it to prosecute claims, payments to be refunded to members in proportion to amounts underwritten by them, *held*, refund paid to receiver of bankrupt's shipper was impressed with trust under contract, and board was entitled to 50 per cent. thereof.

2. Bankruptcy ⊚⇒318(1)—Board of Commerce held to have general claim only for expenses incidental to collection of freight overcharges for bankrupt member.

Contract by bankrupt member of Board of Commerce to pay certain expenses incidental to board's collection of freight overcharges from railroads *held* to make board general creditor of bankrupt for such expenses.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

In the matter of the bankruptcy of George Walter & Sons, Inc., wherein the Butler County Trust Company was appointed trustee in bankruptcy. From a decree of the District Court (8 F.[2d] 267), reversing findings of referee, on a claim of the Butler Board of Commerce, claimant appeals. Reversed in part, and affirmed in part.

James E. Marshall and Marshall & Watson, all of Butler, Pa., for appellant.

James M. Galbreath, W. Z. Murrin, Galbreath & Galbreath, and Murrin & Murrin, all of Butler, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. [1] This case turns on the construction and enforcement of a contract. The bankrupts, George Walter & Sons, were members of the Butler Board of Commerce, a corporation of Pennsylvania not for profit, and on February 1, 1923, joined with a number of fellow members in a contract, in form with the Board of Trade, but in reality with each other. The signatories, all of whom were shippers and receivers of freight, by such contract and to the extent of each signatory's subscription, joined in financially underwriting and constituting the board their agent for general traffic service, which included the "presentation of * * * overcharge claims." For the maintenance of a traffic department thereof, they further agreed to pay to the board "a commission of fifty per cent. (50%) on all moneys received as a result of auditing freight and express bills." On its part the board agreed to "deposit as a special fund all moneys received as commissions for auditing freight and commission bills, * * * and * * * at the end of one year refund to the parties of the second part from said special fund the amount which each of the second parties had underwritten, or such part thereof as the total of the special fund will permit." In pursuance of this contract the board, at the request of Walter & Sons, and later of their receiver, successfuly prosecuted a claim against a railroad for overcharge of freight and recovered $1,641.75.

The mere fact that the railroad's check for this amount was drawn to the order of Walter & Sons and received by the board after bankruptcy, and was indorsed and cashed by the receiver and the proceeds passed into his hands, does not affect the situation, nor relieve the court from disposing of the fund in its officer's hands, so as to enforce the trust and duties imposed by the contract. Accordingly the board presented the situation in a petition and prayed for relief. On reference, the referee awarded 50 per cent. of the fund to the board, but on certificate the court reversed his action and awarded the entire fund to the receiver. In this we think the court fell into error.

In the first place, we agree with the referee that the contract of 1923 was not superseded by that of 1924. We are also of opinion the board does not stand in the position of a claimant for services, for no part of the fund can or does go to it. Nor is any question of lien involved. On the contrary, the issue is the preservation of a trust fund created for the proportionate reimbursement of all the board members who underwrote the maintenance of the traffic department of the board, and the duty of the court, with this fund in its hands, raised by virtue of the contract and stamped with the trusts of its terms by the agreement of Walter & Sons and their fellow members, is to enable the board to fulfill its duty as a trustee in the manner all parties, by their writing, agreed, when the board was constituted their agent to raise these trust-impressed funds.

We accordingly hold that 50 per cent. of the fund should go to the board.

[2] The remaining item of $125.75, claimed by the board to cover its expenses in prosecuting the case of the bankrupt, rests on a very different ground. As we have shown, the obligation of the 25 or more signatories to the writing was mutual. They agreed with one another and with the board to underwrite its doings to the amounts set opposite their names, and that the board should retain one-half of whatever it collected, not for profit, but to maintain its operative existence. Mutuality was the very essence of that undertaking. In addition, the parties agreed "to pay" certain expenses necessarily incident to the collection of their respective claims. This promise was individual, not mutual. It was wholly outside of the underwriting arrangement. On this promise, backed by the guaranty of an individual, who, being without authority, did not assume to speak for the receivers, the board expended the sum in question. The only promise of payment available to it was therefore that of the bankrupt found in the contract. As this was a general promise, the board can recover from the estate only as a general creditor, and only the dividend due a general creditor.

The part of the decree disallowing the preferential claim of $820.87, or 50 per cent. of the amount recovered, is reversed, and the part allowing the general claim of $125.75 is affirmed.